UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN KETZNER,

                Plaintiff,

vs.

BRIAN DOUGLAS,

                Defendant.

                                  /

Case No. 08-13299

Avern Cohn
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 14)

## I.      PROCEDURAL HISTORY

Plaintiff, John Ketzner, is a prisoner in the custody of the State of Michigan

and has brought an action against defendant pursuant to 42 U.S.C. § 1983 for an

alleged violation of his federal constitutional rights. (Dkt. 1). Plaintiff filed his

complaint on July 31, 2008, along with an application to proceed *in forma*

*pauperis*. (Dkt. 1, 2). Plaintiff's *in forma pauperis* application was granted on

August 6, 2008. (Dkt. 3). Plaintiff filed an amended complaint on August 15,

2008. (Dkt. 7). In lieu of filing an answer to the complaint, on October 15, 2008,

defendant Brian Douglas filed a motion for summary judgment, asserting that

plaintiff failed to exhaust his administrative remedies, that there is no question of

material fact, that plaintiff's deliberate indifference claim fails, and that plaintiff's claims are barred by the doctrines of qualified immunity and Eleventh Amendment immunity.  (Dkt. 14).  Plaintiff filed a response to defendant's motion on October 28, 2008.  (Dkt. 16).  Defendant did not file a reply.

This matter is now ready for report and recommendation.  Based on the analysis set forth below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **DENIED**.

## II.    STATEMENT OF FACTS

A.    <u>Plaintiff's Amended Complaint</u>.

According to plaintiff's complaint, he has been in the custody of the Michigan Department of Corrections for over 38 years.  (Dkt. 7).  He is currently housed at the Gus Harrison Correctional Facility (ARF) in Adrian, Michigan. Plaintiff claims that he is a "chronic care patient" who suffers from advanced chronic obstructive pulmonary disease (COPD), spondylosis of the lumbar spine, arthritis of the knees, elbows, wrists, and fingers, and Hashimoto's thyroiditis. Plaintiff was prescribed and was self-administering three inhalers for a number of years, along with Naprosyn, a non-steroidal anti-inflammatory drug and Levothyroxine, for his thyroid condition.

According to plaintiff, MDOC policy directives and operating procedures require all chronic-care patients and prisoners on prescribed medications to be examined and evaluated by the Medical Service Provider (MSP) every six months, and in advance of any prescription expiration to assure prompt renewal.  Plaintiff alleges that the Health Unit Manager (HUM) at ARF is defendant Brian Douglas, who is responsible for "assuring that Plaintiff is provided with his physician-prescribed medications."

Plaintiff was issued his thyroid medication, as usual, on January 11, 2008.  On February 7, 2008, plaintiff's prescription for all five of the medications expired, with the exception of his thyroid medication.  On February 18, 2008, plaintiff was still without his medications or a doctor's appointment, so he submitted an "urgent" health care request, alerting ARF Health Services that his medications had expired, requesting a doctor's appointment, and stating that he could not go without his medications.  By the first week of March 2008, no action had been taken and plaintiff received no response to his request.

On March 21, 2008, plaintiff submitted another health care request, stating that he had been out of his medications for five weeks and marked his request as "urgent."  On March 23, 2008, plaintiff received a response from a health care nurse, who characterized his request as "routine."  Plaintiff asserts that, on March

28, 2008, after 50 days without his medications, he was provided with four of his five medications.  He was not provided with his pain medication, Naprosyn. When plaintiff had not received his pain medication by April 10, 2008, he submitted another "urgent" health care request.  According to plaintiff, the response was, again, that his request was "routine."  The health care nurse also indicated that his file stated that he was allergic to all NSAIDs[1] and that, since Naprosyn is an NSAID, this would need to be investigated before the medication could be ordered.  Plaintiff asserts that he has never been allergic to Naprosyn or any other NSAID and had been prescribed Naprosyn for at least 3-4 years.

On April 30, 2008, plaintiff was seen by Dr. Anil Prasad, who renewed his pain medication, but "inexplicably" reduced the dose.  According to plaintiff, he received the lower, "inadequate" dose of Naprosyn on May 2, 2008, after going 85 days without his pain medication.  After filing a grievance, which was rejected and appealed through Step III, plaintiff filed this suit, alleging violations of his constitutional rights.

---

[1] NSAID is an acronym for non-steroidal anti-inflammatory drug.

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

B.    <u>MDOC Grievance Policy Directive</u>

In conjunction with his dispositive motion, defendant submitted a copy of the applicable MDOC policy directive that sets forth the grievance procedures in effect at the time plaintiff submitted his grievance.  (Dkt. 14, Ex. 5, MDOC Policy Directive 03.02.130, eff. 7/9/07).  The MDOC grievance procedure explains that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures."  (Dkt. 14, Ex. 5, p. 1, § E).  The grievance procedure also requires that the information provided "is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)" and that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included."  (Dkt. 14, Ex. 5, p. 4, § R).  Grievants are encouraged, however, to limit the information in the grievance form and to state the issue briefly.  *Id*.

Within five business days of attempting to resolve a dispute with staff, a prisoner may send a completed grievance form to the Step I Grievance Coordinator designated for the facility.  (Dkt. 14, Ex. 5, § V, p. 4).  And, if the merits of the grievance are addressed, the grievant must be interviewed in order to "explain the grievance more completely" and to enable the respondent to "gather

any additional information needed to respond to the grievance." (Dkt. 14, Ex. 5, p. 5, § Y). If the grievant is not interviewed, the reason must be included in the written response to the grievance. (Dkt. 14, Ex. 5, p. 5, § Y). In response to the Step I grievance, the respondent must identify all policies, rules, or procedures that are related to the issue or conduct grieved. (Dkt. 14, Ex. 5, p. 5, § Z). At Step I, the Grievance Coordinator "shall ensure that a thorough investigation was completed for each Step I grievance accepted," that the response was reviewed by the appropriate supervisor, and that a copy of the response is provided to the grievant by the due date. (Dkt. 14, Ex. 5, p. 5, § AA).

If a grievant is not satisfied with the Step I response or does not receive a timely response, he may request an appeal of the Step I grievance to Step II. (Dkt. 14, Ex. 5, p. 5, § BB). If the Grievance Coordinator determines that the Step II grievance should be accepted, he must then assign an appropriate respondent. *Id*. The MDOC grievance procedure sets forth the appropriate respondents for Step II, depending on the location and subject matter of the grievance. (Dkt. 14, Ex. 5, pp. 5-6, § DD). For example, if a grievance alleges inadequate medical care, the Regional Health Administrator or designee is the appropriate Step II respondent. *Id*. The Grievance Coordinator must then ensure that "any additional investigation

was completed as necessary for each Step II grievance accepted...."  (Dkt. 14, Ex. 5, p. 6, § EE).

If a prisoner is not satisfied with the Step II response, he may file a Step III grievance with the Grievance and Appeals Section.  (Dkt. 14, Ex. 5, p. 6, § FF).  A Step III appeal must be sent to the Grievance and Appeals Section within 10 business days after the prisoner receives the Step II response, or within 10 business days after the response was due.  *Id*.  If a Step III grievance involves medical care or treatment, the Grievance and Appeals Section must forward any such grievance to the Bureau of Health Care Services (BHCS), which must ensure that the grievance is investigated and a timely response provided.  *Id*.  The Manager of the Grievance and Appeals Section must ensure that any additional investigation is completed as necessary for Step III.  *Id*.

The MDOC Policy Directive also explains that a grievance *may*[2] be rejected if it is: (1) vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of another grievance already filed by that grievant; (2) the grievant is on modified access and has filed a grievance in violation of those applicable

_____

[2] A grievance coordinator *must* reject grievances that are jointly filed by two or more prisoners or identical individual grievances filed by multiple prisoners as an organized protest, or grievances that raise certain non-grievable issues.  (Dkt. 14, Ex. 5, pp. 1-2, § F).

procedures; (3) the grievant did not attempt to resolve the issue with the staff

member involved prior to filing of the grievance unless prevented from doing so

by circumstances beyond the grievant's control; or (4) the grievance is filed in an

untimely matter, although, a grievance shall not be rejected as untimely if there is

a valid reason for the delay.  (Dkt. 14, Ex. 5, pp. 1-2, § G).

     C.    <u>Plaintiff's Health Care Requests (Kites)[3] and Grievance</u>

On February 18, 2008, plaintiff submitted a health care request form, asking

for his medications to be refilled.  (Dkt. 16, Ex. B).  Plaintiff wrote:

> All of my medications expired on February 7, 2008.  I
> was last issued medication on January 11, 2008, and I
> have not been scheduled to see the doctor to have them
> renewed.  I must have my medications, particularly my
> three inhalers.  Would you please schedule me to see the
> doctor.  I cannot go without my medications.

According to plaintiff, he received no response to this "urgent" request.

On March 21, 2008, plaintiff submitted another health care request, again

asking for medication refills:

> My Albuterol, Atrovent, Q-Var, Levothyroxine, and
> Naprosyn medications expired on February 7, 2008.  I
> have not been schedule by H.U.M. Douglas to see the
> doctor to have them reordered.  I have been out of all my
> meds for about five weeks.  I put in a request on Feb.

---

   [3]  A "kite" is an informal written request submitted by an inmate.

> 18th, but it wasn't answered.  What is going on?  I'm
> having a hard time of it.

(Dkt. 16, Ex. D).  On March 22, 2008, Doris M. McGraw-Dauer, R.N., responded

to this request, noting it to be a "routine" request.  She commented that "Your

meds are all expired.  Dr will need to reorder when he reviews your file.  I do not

know what happened prior to getting your meds.  Kite a week before your out and

if not gotten your meds in 3 days re-kite.  If having problems kite for nursing

evaluation."  (Dkt. 16, Ex. D).

Plaintiff filed a grievance on March 24, 2008, in which he stated that the

"date of incident" was February 7, 2008 to March 24, 2008.  (Dkt. 16, Ex. E).

Plaintiff's Step I grievance was rejected because it was deemed untimely.  (Dkt.

16, Ex. H).  The Step I response was given to plaintiff on April 4, 2008.  (Dkt. 16,

Ex. E).  According to the response, plaintiff "was required to present this

grievance within 5 days of becoming aware of a grievable issue."  *Id*.  Further,

plaintiff "identified an incident date of 02/07/2008 but did not file this grievance

until 03/24/2008."  *Id*.  Plaintiff was also "encouraged to access health care

through the kite process to address any current health care concerns."  *Id*.

Plaintiff appealed the rejection of his grievance on April 9, 2008.  (Dkt. 14, Ex. 4).  He wrote that his grievance was timely because the issue was ongoing from February 7, 2008 to March 24, 2008.  Plaintiff also wrote:

> Grievant gave Douglas every reasonable opportunity to provide grievant with his mediation.  When grievant identified Douglas as the official responsible for delivery of his medications, he sent a second health care request – the Feb. 18th H.C. request was unanswered – naming Douglas.  Grievance was then filed within five days and does not raise multiple issues.

On April 10, 2008, plaintiff filed another health care request form, asking for medication refills.  He wrote:

> After going 50 days without my five prescribed medications, I was finally given four of them.  I was not given any naproxen,[4] 500 mg, twice daily.  I have waited patiently for this medication, and I now recognize that it is being withheld for some unknown reason and is a grievable issue.  I would like to speak to someone in authority to resolve the issue or a grievance follows.

(Dkt. 16, Ex. L).  In response, Lynn Van Ausdale, RN, wrote that plaintiff's request was "routine" and scheduled plaintiff for a "sick call" on April 14, 2008.  (Dkt. 16, Ex. L).  She further wrote that plaintiff's "file states that [he] has an

---

[4] Naproxen and Naprosyn are the same medication.

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

allergy to NSAIDS.  Naprosyn is an NSAID.  This needs to be investigated before it can be ordered." *Id.*

Apparently, plaintiff's Step II appeal went unanswered.  On May 2, 2008, plaintiff filed a Step III appeal, writing that the "official assigned to respond to grievant's Step II appeal did not respond in a timely manner.  That response was due on May 1, 2008.  This grievance is not resolved.  An extension was not granted." (Dkt. 14, Ex. 4).  As noted above, plaintiff filed suit on July 31, 2008. (Dkt. 1).  The Step III response is dated July 29, 2008 (before suit was filed), but was not signed and approved until August 24, 2008 (after suit was filed).  (Dkt. 14, Ex. 4).  The rejection was upheld on appeal because plaintiff did not provide a justifiable excuse for the untimeliness of the grievance.  *Id.*

> D.  <u>Defendant's Motion for Summary Judgment</u>

Defendant argues that plaintiff's grievance did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) because the grievance was rejected as untimely under the requirements of the grievance process.  (Dkt. 14, p. 7).  Plaintiff filed the grievance against defendant Douglas on March 24, 2008, alleging that he ran out of his prescription medications on February 7, 2008.  Defendant asserts that plaintiff attempted to "circumvent the grievance process time limit by claiming his issue was 'ongoing.'"  *Id.*  According

to defendant, plaintiff cannot get around the facts that he complained that his medications expired on February 7, 2008, that he was not scheduled to have the medications renewed, and his claim that his February 18, 2008 health care request went unanswered. *Id.* According to defendant, these facts show that plaintiff has admitted that "he made no attempt to resolve the issue of his expired medication prescriptions within two business days of becoming aware of the issue; and March 24, 2008 is well beyond five business days of February 18, 2008." Thus, defendant argues, plaintiff's grievance was properly rejected as untimely and he has failed to exhaust his administrative remedies.

Defendant also argues that the claims against him in his individual capacity are barred by the doctrine of qualified immunity. According to defendant, he was not responsible for passing out the plaintiff's medication, which plaintiff indicates was self-administered; nor was he responsible for anticipating when plaintiff might run out of medication and would need to see the doctor to obtain new or renewed prescriptions. According to defendant's affidavit, inmates are given a health care orientation handout when they arrive at ARF and undergo orientation. The handout advises inmates, in pertinent part, that they should submit a health care request when they are down to a seven-day supply of medication. Defendant attests that there is no record of such notification from the plaintiff. Rather,

according to defendant, the first notice to health care indicating that plaintiff had run out of medication was dated March 21, 2008.  Moreover, plaintiff never contacted defendant directly with any indication that he was having problems with his medication.  According to defendant, contrary to plaintiff's assertions, defendant does not have a legal duty to anticipate when plaintiff might run out of medication.  Moreover, the medical practitioners, i.e., physicians and physician assistants, not defendant, bear the responsibility for ordering medication for their patients and determining the dosages of those medications.  Defendant also points out that the pain medication that plaintiff claims he was without for 62 days, Naproxen, is available at the prison store under the brand name Aleve and plaintiff could have ordered that pain medication for himself at any time.

According to defendant, plaintiff offers no evidence in support of a contention that defendant had knowledge that plaintiff was out of his medication. Further, given that a nurse responded to his March 21, 2008 health care request on March 23, 2008; and he was provided with everything but the Naproxen on March 28, 2008, defendant argues that plaintiff has not pled and demonstrated a violation of clearly established law governing Eighth Amendment deliberate indifference claims, and his individual capacity claim against defendant is, therefore, barred by the doctrine of qualified immunity.

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

Lastly, defendant argues that plaintiff's claims against him in his official capacity are barred by the Eleventh Amendment, which prohibits suits against a State or its agencies, and a suit against a state employee in his official capacity is tantamount to a suit against the state itself and is barred by Eleventh Amendment immunity.

     E.    <u>Plaintiff's Response to Motion for Summary Judgment</u>

With respect to exhaustion, plaintiff argues that the Court should reject defendant's claim that he filed this lawsuit too early, i.e., before the Step III grievance was resolved. (Dkt. 16). Plaintiff points to PD 03.02.130, which provides that the total grievance process from the point of filing a Step I grievance to providing a Step III response must be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I or Step II. (Dkt. 16, citing Ex. A). Plaintiff filed his grievance on March 24, 2008 and the 120 calendar days expired on July 22, 2008, before plaintiff filed suit on July 31, 2008.

Plaintiff also urges the Court to reject defendant's assertion that his grievance was untimely. Plaintiff says that his medications expired on February 7, 2008 and that he ran out of his medications within a few days. He says that, at that time, he did not know that his medications had not been renewed, but believed that

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

14

they were, per usual, simply late.  After waiting 10 days for a doctor's appointment or "call-out" to pick up his medications, but receiving neither, he submitted a health care request on February 18, 2008.  Plaintiff determined that it was appropriate to give health care some time to respond to his request, but they did not.  Plaintiff also alleges that, since he did not know who was responsible for providing him with his medications and the grievance policy required him to name the specific staff person against whom he had a grievance, he felt that he could not yet file a grievance.  Plaintiff claims that he made several attempts to identify the staff person responsible, but that no one would identify the person.  On March 20, 2008, plaintiff claims that a "concerned correctional officer voluntarily identified Health Unit Manager (HUM) Brian Douglas...as the person responsible."  At that point, plaintiff concluded that he had a valid grievable issue and could file a grievance.  On March 21, 2008, within two business days mandated by the policy for plaintiff to attempt to resolve the issue with the responsible staff person, plaintiff filed a second health care request, in an attempt to speak with defendant and resolve the issue.  Plaintiff received a response on March 23, 2008 from health care services, but defendant Douglas never responded and never attempted to resolve the issue with plaintiff.

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

Plaintiff filed his grievance on March 24, 2008, four days after learning the identity of the staff person "responsible" for ensuring that his medications were renewed.  In support of his assertion, plaintiff points to the MDOC Operating Procedure 03.04.100C, Pharmacy Services and Medication Management (Chronic Care Medication), which provides in part that the "HUM" must assure that there "is a system in place for assuring all prisoners who are in the Chronic Care Clinic are scheduled to see the MSP [Medical Service Provider] every six months, or more often as determined by the MSP."  This relates to the MSP's responsibility to write medication refills for chronic care patients for up to six months, but not to exceed the time period until the next MSP appointment, which could be less than six months.  (Dkt. 16, Ex. F, p. 6).

Plaintiff also alleges that his grievance was improperly rejected.  After receiving plaintiff's grievance, and before assigning a grievance respondent, ARF Grievance Coordinator J. Eaton reviewed plaintiff's grievance to ensure it was properly filed.  According to plaintiff, after this initial, satisfactory assessment, Eaton then assigned ARF Health Care Provider Tammy Rothhaar as the grievance respondent. (Dkt. 16, Ex. G).  Plaintiff asserts that it was Rothhaar's responsibility, assigned to her by MDOC policy and procedure, to review the grievance, investigate the issue grieved, to interview the grievant, and submit a

report.  (Dkt. 16, Exs. A and B).  Instead of performing the duties assigned to her by policy and procedure, plaintiff alleges that Rothhaar improperly overruled Grievance Coordinator Eaton's authority and his acceptance of plaintiff's grievance as being timely and properly filed, by taking it on herself to reject it, stating that it was not timely filed and that it raised "multiple" issues.  (Dkt. 16, Ex. H).

On his Step I grievance form, plaintiff identified the date of incident as being from "2-7-08 to 3-24-08," the period of time from the expiration of his medications to the date of the submission of his grievance.  According to plaintiff, this time period reflected the continuing period during which he was denied access to the doctor, denied his prescribed medications, and during which he now alleges he was subject to violations of the Eighth Amendment.  The deprivation was ongoing and it had not been resolved, despite plaintiff's efforts to be reasonable, cooperative, and to work within the system to resolve the issue without having to file a grievance.  Thus, plaintiff urges the Court to reject defendant's claim that it is plaintiff's responsibility to keep track of medication orders, doctors' appointments, and overseeing the work product of Health Services personnel and to direct them to do what they are mandated to do by policy and procedure. According to plaintiff, grievance respondent Tammy Rothhaar arbitrarily chose

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

the single date of February 7, 2008 as the date of the incident when, in fact, the incident spanned a period of some 50 days.

Plaintiff also asserts that he has raised a genuine issue of material fact regarding whether defendant was deliberately indifferent to his serious medical needs.  According to plaintiff, defendant had a legal and affirmative duty to schedule plaintiff for a doctor's appointment well in advance of the expiration date of his prescribed medications.  Specifically, the HUM assures that: (1) prisoners do not go without medically necessary medication; (2) medications are administered only on authorization of an MSP; (3) medication is provided in a manner consistent with the medical needs of the patient; (4) there is a system in place to document medication not received in a timely manner from the pharmacy; (5) all prisoners on medications required on an ongoing basis have a schedule appointment with the MSP prior to the expiration date of the last medication order; and (6) there is a back-up system in place, approved by the BHCS Administrator, to retrieve medication not received from the pharmacy.  (Dkt. 16, Ex. F, p. 4). Plaintiff asserts that the Court should reject defendant's attempt to place the responsibility for his acts and omissions on others and argues that while defendant may have delegated authority to perform his duties, he cannot delegate his

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

responsibilities, as articulated in MDOC policy and procedure.  Citing *Weeks v.*

*Chaboudy*, 984 F.23. 185, 187 (6th Cir. 1993); *Leach v. Shelby County*,

891 F.2d 1241 (6th Cir), cert. denied, 495 U.S. 932 (1989), plaintiff argues that it

is sufficient for him to allege that defendant "failed to perform his legally

mandated ministerial duties, [and] that failure is sufficient to establish deliberate

indifference."  According to plaintiff, he need not provide proof of intent

to harm, nor is the Court required to conduct a detailed inquiry into defendant's

state of mind.

## III.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed.R.Civ.P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476, 478-

79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary

judgment:

> The moving party bears the initial burden of establishing
> an absence of evidence to support the nonmoving party's
> case.  Once the moving party has met its burden of
> production, the non-moving party cannot rest on its
> pleadings, but must present significant probative

> evidence in support of the complaint to defeat the motion
> for summary judgment.  The mere existence of a scintilla
> of evidence to support plaintiff's position will be
> insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party.  *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

B.    <u>Exhaustion</u>

1.    Burden of proof

In *Jones v. Bock*, the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id*. at 923.  The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process.  *Id*.  Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense.  *Id*. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise.  *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

2.    Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.

2002) (emphasis in original).  "Proper exhaustion demands compliance with an

agency's deadlines and other critical procedural rules because no adjudicative

system can function effectively without imposing some orderly structure on the

course of its proceedings." *Id*. at 2386.  The Supreme Court also observed that

"[t]he PLRA attempts to eliminate unwarranted federal-court interference with the

administration of prisons, and thus seeks to 'afford corrections officials time and

opportunity to address complaints internally before allowing the initiation of a

federal case.'" *Id*. at 2387, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002)

(alteration omitted).  Exhaustion serves a dual purpose:  it gives prisoners "an

effective incentive to make full use of the prison grievance process and

accordingly provides prisons with a fair opportunity to correct their own errors."

*Id*. at 2387-88.  Additionally, the exhaustion requirement "has the potential to

reduce the number of inmate suits, and also to improve the quality of suits that are

filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on

prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a

grievance against the person he ultimately seeks to sue," and exhaust the claim as

to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505

(6th Cir. 2001).  The critical holding in *Jones* was that the PLRA does not impose

additional exhaustion procedures or requirements outside the prison's grievance procedures. As observed in *Jones*, the primary purpose of a grievance is to alert prison officials of a particular problem, "not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 127 S.Ct. at 923, quoting, *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004); *see also*, *Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."). As such, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." *Jones*, 127 S.Ct. at 923. Prison officials in the present case have not claimed that they did not receive "fair notice" of plaintiff's alleged mistreatment.

      3.    Defendants have not met their burden of proving that plaintiff failed to exhaust his administrative remedies.

As a general rule, "claims relating to an ongoing medical condition arising before, as well as after, the relevant grievance was filed may be considered exhausted." *Ellis v. Vadlamudi*, 568 F.Supp.2d 778 (E.D. Mich. 2008), citing, *Griswold v. Morgan*, 317 F.Supp.2d 226, 231 (W.D.N.Y. 2004); *Gomez v.*

*Winslow*, 177 F.Supp.2d 977, 982 (N.D. Cal. 2001); *Poullard v. Blanco*, 2006 WL 1675218, *8 (W.D. La. 2006); *Garcia v. Mule Creek State Prison*, 2005 WL 1366515, *2 (E.D. Ca. 2005). As Judge Lawson observed, while "some discrete events obviously fit neatly within that label [a "grievable issue" under the MDOC grievance procedure], such as an assault by a prison guard or a denial of certain privileges, other circumstances may not become 'grievable' until the passage of time or the aggregation of events manifested by the conduct of several prison staff members." *Ellis*, 586 F.Supp. 2d at 783. In the latter circumstances, the precise "date" of the "grievance issued may not always be obvious" and the "rigid application of the time limits established by the regulations becomes difficult." *Id*. Judge Lawson further observed that for an acute medical condition, like a heart attack or a diabetic coma, the time of the failure to treat (and, thus, the time of the Eighth Amendment violation) can be determined with some precision, making the time limit for filing a grievance easy to establish. However, such is not the case for a "chronic medical condition that is ignored, or for which treatment is delayed or inadequate." *Id*. Indeed, the "seriousness of a chronic condition may not become obvious to prison officials until some time passes, and the indifference to that condition-and the resulting pain suffered by the prisoner that equates to the infliction of punishment-may not become manifest until then as well." *Id*. This

type of condition is "properly identified as 'ongoing,' and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it." *Id*. at 784.

Further, as recently observed by Magistrate Judge Ellen S. Carmody, under the rigid application advocated by the MDOC, virtually all medical claims would fail as untimely. *Hoye v. Nelson*, 2007 WL 5062014, *7 (W.D. Mich. 2007). In *Hoye*, the plaintiff submitted several kites regarding back pain, but was refused treatment. The plaintiff filed a grievance on February 17, 2006, alleged that he had been trying to get appropriate treatment since his back injury occurred. At Step II, the respondent indicated that the grievance should have been rejected at Step I as untimely because the dates of the incident were listed as October 28, 2005 and the grievance was not filed until February 17, 2006. The plaintiff asserted that he wrote "ongoing" in the "date of incident" portion of the grievance form and submitted the grievance on February 17, 2006, one day after he received an unsatisfactory response to his health care request. The plaintiff claimed that the grievance coordinator crossed out "ongoing" and wrote in the date of "October 28, 2005." *Id*. at *6. Magistrate Judge Carmody concluded that the plaintiff's grievance was timely because he filed his grievance one day after receiving an

unsatisfactory response from health care regarding his request.  Magistrate Judge Carmody rejected the MDOC's attempt to insert the date of plaintiff's injury as the date of incident on the grievance form, concluding that if "medical claims are to be grieved within five business days of a plaintiff's actual injury rather than when a plaintiff is denied medical treatment, then most medical claims would fail under the MDOC's timeliness requirement."  *Id* at *7.

Applying these principles to the present case, the undersigned concludes that plaintiff's grievance was timely filed.  The position advocated by defendant, like that in *Hoye*, is contrary to the primary purpose of the exhaustion requirement, which is to provide corrections officials with fair notice and an opportunity to correct and resolve disputes.  There is no claim that corrections officials  were not provided with fair notice and an opportunity to resolve the issues grieved.  Moreover, where an ongoing medical condition remains unaddressed and prison officials retain the power to correct the problem, a grievance will be deemed timely.  *Ellis*, 586 F.Supp.2d at 784 ("a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it.").  Thus, the undersigned concludes that plaintiff's grievance was timely filed and was improperly rejected as untimely.

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

C.    Deliberate Indifference

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981). Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs. *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. He must show that he had a serious medical need and he must show that a defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

1.    Serious medical need

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988). An Eighth Amendment claim may be premised on deliberate indifference to exposing an inmate to an unreasonable risk of serious harm in the future. *Dodson v. Wilkinson*, 2008 WL 5378017, *3 (6th Cir. 2008), citing, *Helling v. McKinney*,

509 U.S. 25, 36 (1993). A delay in access to medical attention, however, can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994), (citations omitted), overruled on other grounds, *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860-861 (6th Cir. 1976).

A serious medical need generally falls into one of two categories (1) a medical need diagnosed by a physician as requiring treatment; or (2) a medical need that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988). As to the latter category, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Dodson*, at *4, quoting, *Napier*, 238 F.3d at 742.

In the context of failure to provide prescription medications, some cases hold that where a prisoner offers no evidence showing any adverse consequences

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

from the delays in the receipt of his medications, a deliberate indifference claim fails. *Gillard v. Kuykendall*, 295 Fed.Appx (8th Cir. 2008), citing, *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir.2005) (objective seriousness of delay in treatment must be measured by reference to effect of delay, which must be shown by verifying medical evidence). Similarly, other courts have held that where the delay in receipt of prescription medications is insignificant (no longer than seven days) and the prisoner suffered no lasting physical harm from the delay, the objective prong of the *Wilson* test was not satisfied. *Williams v. Arnold*, 207 Fed.Appx. 980, 985 (11th Cir. 2006).

As stated in *Monmouth*, however, a serious medical need may be one that has already been diagnosed by a physician *as requiring treatment*. Thus, where the medical need is already recognized and diagnosed, the "verifying medical evidence" requirement is simply inapplicable. As the Sixth Circuit explained in *Blackmore v. Kalamazoo Co.*, 390 F.3d 890, 898 (6th Cir. 2004):

> *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

Given the undisputed evidence of plaintiff's long-term use of various medications for his conditions of COPD and arthritis/spondylosis, which were prescribed by a physician, there is, at a minimum, a question of fact regarding whether plaintiff can satisfy the first prong of *Wilson*.

> 2.    Deliberate indifference by defendant

The Court must now decide whether plaintiff has established a question of fact as to the second element of *Wilson*, which requires a showing that this particular defendant acted with deliberate indifference. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of "malicious" or "sadistic" action. *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at 105-106 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v.*

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

*Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference.").

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983. *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2. In *Whitley v. Albers*, 475 U.S. 312 (1986), the Court held that "[i]t is obduracy and wantonness, not inadvertence or error in good faith" that violates the Eighth Amendment in "supplying medical needs." "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). The deliberate indifference standard requires knowledge of the particular medical condition in order to establish an intent, ("a sufficiently culpable state of mind," *Wilson*, 501 U.S. at 298), to deny or to delay purposely "access to medical care" or intentionally to interfere "with the treatment once prescribed," *Estelle*, 429 U.S. at 104-05. Thus, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn ex rel. Parks*

*v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.), cert. denied, 513 U.S. 873 (1994).

Here, plaintiff specifically named defendant in both a kite and a grievance. Defendant attests in his affidavit that plaintiff "never kited me directly with any indication that he was having problems with his medication." (Dkt. 14, Ex. 6). Defendant further attests that he, as the HUM, has no control over the specific doses ordered by medical practitioners. *Id*. Defendant does not, however, state in his affidavit that he had no knowledge of plaintiff's complaints about not receiving his medication. Defendant attests that health care had no notice of plaintiff's medication issues until March 21, 2008, when plaintiff filed a health care request form. (Dkt. 14, Ex. 6). The implication here appears to be that plaintiff received most of his medications by March 28, 2008 and thus, as far as defendant was aware, plaintiff was only without most of his medications for approximately one week. With respect to plaintiff's pain medication, defendant attests that a non-prescription version of that medication was available through the prisoner store and that plaintiff could have ordered this medication for himself at any time. (Dkt. 14, Ex. 6). However, unlike the circumstances in *Heibel v. Caruso*, 2009 WL 388234, *3 (E.D. Mich. 2009), there is no evidence in the

record that plaintiff was actually advised that he could purchase the same medication through the prisoner store.

Moreover, defendant does not contradict plaintiff's claim that defendant, as the HUM, is personally responsible for assuring that prisoners do not go without medically necessary medication; that medication is provided in a manner consistent with the medical needs of the patient; and that all prisoners on medications required on an ongoing basis have a schedule appointment with the MSP prior to the expiration date of the last medication order.  (Dkt. 16, Ex. F, p. 4).  A claim under § 1983 alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment may be brought against a prison official for his or her personal role in implementing or enforcing a policy in a way that deprives an individual of his constitutional rights.  *Estate of Young v. Martin*, 70 Fed.Appx. 256, 260 n. 3 (6th Cir. 2003), citing, *Taylor v. Michigan Department of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995); *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992).  Such claims are appropriate where individual officials are charged with "abandoning the specific duties of [their] position[s] ... in the face of actual knowledge of a breakdown in the proper workings" of their respective departments or facilities.  *Martin*, 70 Fed.Appx. at 260, quoting, *Hill*, 962 F.2d at 1213.  "As opposed to holding the officials vicariously liable for the

misconduct of others, plaintiffs may hold these officials liable for their failures in their own obligations with regard to developing and implementing policy and custom in such a way that resulted in violations of their Eighth Amendment rights." *Id.* Indeed, "supervisors may be held liable if *they fail to take corrective action*, turn a blind-eye to a constitutional violation, or condone a policy and/or practice that amounts to a constitutional violation." *Harman v. Bell*, 2008 WL 606998, *2 (E.D. Ark. 2008) (emphasis added), citing, *Ambrose v. Young*, 474 F.3d 1070, 1079 (8th Cir. 2007); *Johnson v. Blaukat*, 453 F.3d 1108 (8th Cir. 2006); *Brown v. Missouri Dep't of Corr.*, 353 F.3d 1038, 1040 (8th Cir. 2004).

In light of the foregoing factual disputes, the undersigned cannot say that plaintiff has failed to create a genuine issue of material fact as to whether defendant was deliberately indifferent to his serious medical needs.

D.     Eleventh Amendment Immunity

A suit against a public official in their "official capacity" is a suit against the public entity that employs the public official. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008), citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In this case, defendant is employed by the State of Michigan so a suit against defendant in his official capacity is a suit against the State of Michigan. "The Eleventh Amendment bars suits brought in federal court against a state and

its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." *Id.* The record does not indicate that the State of Michigan has waived its immunity or otherwise consented to being sued and, therefore, the claim cannot be maintained against defendant in his official capacity. Thus, the undersigned suggests that plaintiff's claims against defendant in his official capacity are barred. However, the Eleventh Amendment does not bar suit against defendant in his individual capacity.

E.    Qualified Immunity

Defendant claims to be entitled to qualified immunity regarding his actions in this case. The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendant bears the burden of pleading qualified immunity, but plaintiff bears the burden of showing defendant is not entitled to qualified immunity. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

Report and Recommendation
Defendant's Motion for Summary Judgment
*Ketzner v. Douglas*; 08-13239

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194 (2001). The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. at 201. If the first question was resolved in the affirmative then the court would decide "whether the right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

Very recently, and after the parties had submitted their motions in this case, the Supreme Court revisited their decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, — U.S. —, 2009 WL 128768 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without

having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."

Given the foregoing conclusion that there are questions of fact pertaining to plaintiff's Eighth Amendment claims, the undersigned cannot say that defendant is entitled to qualified immunity. *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989) (When "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury," the "jury becomes the final arbiter of [a] claim of immunity."); *Bouggess v. Mattingly*, 482 F.3d 886, 888 (6th Cir. 2007).

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 28, 2009                              s/Michael Hluchaniuk
                                                  Michael Hluchaniuk
                                                  United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

 I certify that on <u>April 28, 2009</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Julia R. Bell,</u> and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>John Ketzner, # 119069, G. ROBERT COTTON CORRECTIONAL FACILITY, 3500 N. Elm Street, Jackson, MI 49201-8877</u>.

s/James P. Peltier    
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov
