UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN KETZNER,

      Plaintiff,

v.                                                                Case No. 08-13299
                                                                  HON. AVERN COHN

BRIAN DOUGLAS,

      Defendant.

_____/

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.  INTRODUCTION

This is a prisoner civil rights case under 42 U.S.C. § 1983 in which plaintiff John Ketzner (Ketzner), a former prisoner at Gus Harrison Correctional Facility in Adrian, Michigan, claims that defendant Brian Douglas (Douglas), the prison's health unit manager (HUM), acted with deliberate indifference to his medical needs in violation of the Eighth Amendment.

On August 8, 2008, the Court referred all pretrial matters to Magistrate Judge Michael J. Hluchaniuk (MJ).  (Doc. 6).  On October 15, 2008, Douglas filed a motion for summary judgment.  (Doc. 14).  On June 11, 2009, the Court adopted the MJ's report and recommendation (MJRR), (Doc. 20), in which the MJ recommended that Douglas's motion be denied, (Doc. 17), and to which Douglas objected.  (Doc. 18).

Now before the Court is Douglas's second motion for summary judgment.  For the reasons that follow, this motion will also be denied.

## II. FACTS

The pertinent facts as the Court understands them from the parties' papers and MJRR are as follows.

### A.

While serving his custody term at Gus Harrison Correctional Facility, Ketzner was classified as a chronic care patient.  He suffered from advanced chronic obstructive pulmonary disease (COPD), spondylosis of the lumbar spine, arthritis of the knees, elbows, wrists, and fingers, and Hashimoto's thyroiditis, for which he was prescribed five medications: three inhalers, Naprosyn, and Levothyroxine.

### B.

Ketzner received his prescribed medications until January 11, 2008.  On February 7, 2008, four of Ketzner's prescriptions expired.  On February 18, 2008, the prescriptions had not been refilled, prompting Ketzner to submit an urgent health request.  The prescriptions remained unfilled as of March 21, 2008, at which time Ketzner filed a second urgent health care request, directed to Douglas specifically, alerting him that he had been out of his medications for five weeks, letting them know that his first request went unanswered, and urgently requesting his three inhalers.  On March 24, 2008, Ketzner filed a grievance against Douglas, complaining that he had not received his medications.[1]  On March 28, 2008, 50 days after his first request, Ketzner received all of his medications except for Naprosyn.

On April 10, 2008, Ketzner submitted a third urgent health care request after not

---

[1]Ketzner's March 24, 2008, grievance against Douglas was ultimately rejected, leading him to file the present lawsuit.

receiving the Naprosyn.  In response, a prison nurse informed Ketzner that his request was being investigated prior to being ordered because of his allergy to non-steroidal anti-inflammatory drugs (NSAIDs), an allergy that Ketzner denies having.  On May 2, 2008, 85 days after his initial request, a prison doctor prescribed Ketzner a lower dose of Naprosyn, which he says was inadequate.

As a result of the medications being withheld, namely the three inhalers, Ketzner claims that he suffered significant shortness of breath and pain.  He further asserts that the "deep and hard coughing" caused from not having his inhalers resulted in a inguinal hernia diagnosis, which later had to be surgically repaired.  (Doc. 37-3 pp. 12-13).

C.

In the role of HUM, Douglas's role "[o]versees the facility medication management system," and "make[s] sure that everything [is] going right with it and fixing everything that I'm aware of."  (Doc. 37-10 p. 11).  Douglas says that one way he is made aware of issues is when prisoners submit health care requests, i.e., kites, to him, in which case he can then "take care of it."  (Id.).  He also says that for some medications, such as inhalers, when he is made aware – by the kite system or informally – that an inmate needs one, he assures that the inmate receives it within "the next day or the next 24 hours."  (Doc. 37-10 p. 12).

As to the health care request process, if a health care request is not directed to Douglas by name, Douglas receives a copy of it, but does not necessarily review it.  (Doc. 37-10 p. 16).  However, Douglas says that if a prisoner is a chronic care patient, he is more likely to review their health care requests if he is made aware of it.  (Id.).  Finally, if a health care request is directed to Douglas by name, he says it is delivered directly to his mailbox and he reviews all of them.  (Id.).  If a grievance against Douglas is delivered to Douglas

directly, it is delegated to a health unit supervisor, but he is made aware of its filing.  (Id.).

Douglas says that he became aware of Ketzner's situation when it became "a grievance situation."  (Doc. 37-10 p. 8).  He says he delegated handling of the situation to a member of his staff and that he was made aware by this staff member of a problem with Ketzner's inhalers, i.e., a risk that he may run out.  (Doc. 37-10 p. 17).

## III. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(a).  Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When a motion for summary judgment is properly made and supported, an opposing party must set out specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  All facts and inferences should be viewed in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970).

## IV. ANALYSIS

Douglas generally says that he is entitled to summary judgment on two grounds: because he was not aware of Ketzner's medical needs, and because violation of a prison policy does not rise to an Eighth Amendment violation.[2]

_____

[2]Ketzner also argues that Douglas's present motion is not proper under the "law of the case doctrine" on grounds that the motion was already ruled on when the Court

A.

As to Douglas's first argument, the Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to prisoners' serious medical needs. Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir.2004) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Failure to provide medical care may rise to the level of a violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment where objective and subjective requirements are met. Harrison v. Ash, 539 F.3d 510, 517-18 (6th Cir.2008); Farmer v. Brennan, 511 U.S. 825, 833 (1994).

1.

To satisfy the objective component, the injury must be sufficiently serious. Wilson v. Seiter, 501 U.S. 294, 297 (1991). In the context of "conditions of confinement" cases, the Eighth Amendment is concerned only with "deprivations of essential food, medical care or sanitation" or "other conditions intolerable for prison." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Brown v. Bargery, 207 F.3d 863, 867 (6th Cir.2000) (citing Farmer, 511 U.S. at 834) ("[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."). Further, physical injury need not be significant, but "must be more than de minimis for an Eighth Amendment claim to go forward." Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010) (reversing district court dismissal and holding diagnosis of periodontal disease and tooth extraction due to lack of prison dental care was

---

adopted the MJRR denying summary judgment. While Ketzner's argument has merit, because the arguments raised on summary judgment here vary slightly than those argued in Douglas's first motion for summary judgment, the Court chooses to analyze them substantively.

more than a <u>de minimis</u> injury sufficient to survive summary judgment, compared to a prisoner's "whirling sensation" and "two small bruises and minor cuts" previously held by the Sixth Circuit to be <u>de minimis</u>) (citations omitted).

Here, it is undisputed that Ketzner was a chronic care patient with diagnosed medical conditions for which the prison prescribed medications.  As the MJ stated, "[a] medical need is 'serious' if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  (MJRR at 27 (citing <u>Monmouth County Correctional Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987))).  Further, Ketzner's shortness of breath and pain, which caused him to suffer severe coughing attacks and later likely caused or contributed to a hernia diagnosis and surgery, are sufficient to show that he suffered more than a <u>de minimis</u> injury.

Thus, Ketzner's medical conditions were such that a jury could find that they were sufficiently serious and of a type where deprivation of his medications posed a substantial health risk.  Accordingly, as an initial matter, there is a genuine issue of material fact related to whether the Eighth Amendment's objective prong is met.

2.

The subjective component requires a showing that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety.  <u>Wilson</u>, 501 U.S. at 302-03.  Deliberate indifference "entails something more than mere negligence." <u>Farmer</u>, 511 U.S. at 835.  An inmate must show that prison officials had "a sufficiently culpable state of mind" in denying medical care.  <u>Brown</u>, 207 F.3d at 867 (citing Farmer, 511 U.S. at 834). In <u>Brown</u>, the Sixth Circuit noted that "[i]n prison-conditions cases[,] state of mind is one of

deliberate indifference to inmate health or safety." Id.  This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer, 511 U.S. at 837); see also Pack v. Martin, 174 Fed. Appx. 256, 259 (6th Cir.2006) ("The party asserting a claim that medical care received was lacking or inadequate bears the burden of proving that the decision to provide no, or substandard, medical care was deliberate or knowing.").

Here, Douglas asserts he had no knowledge of Ketzner's health care requests, thus, he says he could not have been deliberately indifferent to his medical needs in violation of the Eighth Amendment.  Ketzner responds that there is at least a genuine issue of material fact about Douglas's knowledge of the situation.  Ketzner is correct.

Ketzner submitted a health care request directly to Douglas.  While Douglas says that he did not see Ketzner's health care request, he admits that he receives a copy of each health care request submitted and that he is more likely to review health care requests made by chronic care prisoners, like Ketzner.  Further, Douglas admits that he receives all health care requests directed to him by name.  Thus, consistent with the MJRR, the Court finds that there is a genuine issue of material fact as to whether Douglas was aware of and deliberately indifferent to Ketzner's medical needs.

B.

As to Douglas's second argument related to the prison policy, while the Court acknowledges that violation of a prison policy alone does not rise to an Eighth Amendment violation, Douglas's argument is misplaced because Ketzner does not argue that simply violating MDOC operating procedures equates to a constitutional violation.  Rather,

7

Ketzner's argument asserts that MDOC operating procedures go to Douglas's likelihood of awareness of Ketzner's medical needs. Further, as the MJ noted, Douglas may be found liable for his or her personal role in implementing or enforcing a policy in a way that deprives an individual of his constitutional rights. (Doc. 37-22 p. 33); see Estate of Young v. Martin, 70 Fed. Appx. 256, 260 n. 3 (6th Cir. 2003).

Here, Douglas admits to being aware of the previously stated HUM duties. Further, he admits to performing them: to receiving all health care requests and for being responsible for managing the health care staff that attends to prisoners' health care requests when he is not personally involved. He also states that when a prisoner's medical needs are not taken care of, he is responsible for fixing the problem. Finally, he says that he was aware of Ketzner's grievance and of the fact that a member of his staff identified issues with being able to provide Ketzner the inhalers that he needed, and he does not deny that Ketzner did not receive his medications as required for a period of fifty days.

Thus, viewing the facts in a light most favorable to Ketzner, a reasonable jury could find that Douglas was aware and deliberately indifferent to Ketzner's medical needs or, alternatively, that he implemented and enforced MDOC policies in such a way as to deprive Ketzner of his Eighth Amendment rights. Accordingly, summary judgment is not proper.

## V. CONCLUSION

For the above reasons, Douglas's motion for summary judgment is DENIED.

SO ORDERED.


Dated: February 10, 2011          S/Avern Cohn
                                      AVERN COHN
                                      UNITED STATES DISTRICT JUDGE

**08-13299 Ketzner v. Douglas**
**Memorandum & Order Denying Dft's Motion for Summary Judgment**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 10, 2011, by electronic and/or ordinary mail.

S/Julie Owens
Case Manager, (313) 234-5160